Dambman *v.* Empire Mill.

might be rendered, and thus the evidence of Rowe prevented from operating in his favor; and where he had no interest in the event, except what was adverse to the party calling him.

He ought not to have been excluded; and for this error there must be a new trial; the costs to abide the event.

[NEW-YORK GENERAL TERM, December 1, 1851. *Edmonds*, *Mitchell* and *King*, Justices.]

———— ◆ ◉ ◆ ————

## DAMBMAN *vs.* THE EMPIRE MILL and others.

A creditor at large, can not apply, by petition, for a receiver of the estate of an insolvent corporation, under the provision of the revised statutes, (2 *R. S.* 463, § 42, [*Sec.* 36,] ) which confers upon a creditor, who has a judgment and an execution unsatisfied, the power of applying for a receiver, and a dissolution of the corporation. But it by no means follows that he can not, by a suit to be brought, avail himself of the other powers of this court in respect to corporations.

Those powers, as defined in article 2, title 4, chapter 8, part 3, of the revised statutes, are not, in all cases, limited to judgment creditors; but for various purposes, enumerated therein, may be exercised in behalf of general creditors.

The judgment creditor has a peculiar privilege, by virtue of his unsatisfied execution, of having the property of the corporation sequestrated, a receiver appointed, and its property distributed amongst its creditors.

At the same time, the attorney general may institute proceedings, in certain cases, for a dissolution of the corporation. And a general creditor may institute proceedings, either to restrain the improper exercise of certain powers, or to procure payment of his debt.

The instituting of either of these proceedings, does not preclude the others; but each creditor may pursue his own remedy, as given him by the statute, and according to the circumstances of each case.

A judgment and execution creditor of an insolvent corporation obtained an injunction and the appointment of a receiver, who was ordered to do nothing in hostility to the rights of any of the judgment or execution creditors of the corporation. *Held*, that it would not be proper for the court, in the exercise of a sound discretion, to allow that proceeding to operate as a bar, in preventing the appointment of a receiver in another suit against the corporation, commenced by a general creditor; because, although the suit in which a receiver had already been appointed, might be made for the benefit of all

the creditors, by amendment; yet it was at the option of the plaintiff in that suit, whether he would amend or not; and because, also, of the restriction upon the powers of the receiver in that suit, which forbade him to do any thing in hostility to the rights of any of the judgment or execution creditors, and which thus deprived him of a power that might be most essential to the creditors; that, namely, of inquiring into the validity of the demands which claimed a preference.

THIS was an appeal from an order made at the New-York special term in April, 1851, by Mr. Justice KING. The defendant, the "Empire Mill," was a corporation engaged in the manufacture of woolen goods, in the county of Oneida, formed in July, 1846, under the acts of the legislature of the state of New-York, relative to incorporations for manufacturing purposes; it became insolvent, and judgments were obtained by several of its creditors, previous to the month of April, 1851, in suits instituted against it. On the 8th of April, 1851, the plaintiff, Dambman, commenced a suit against the Empire Mill, and the creditors who had obtained judgments against it, as defendants; alledging that such judgments were improperly obtained; and on the same day obtained an order from Mr. Justice King for the defendants to show cause, at a special term of the supreme court, to be held in the city of New-York, on the 26th of April, 1851, why the injunction prayed for in the complaint should not be granted, and the receiver therein prayed for should not be appointed; and in the meantime, enjoining the defendants, the Empire Mill, and the officers, &c. thereof from transferring or assigning any of the property or effects of the Empire Mill; and also enjoining the judgment creditors of the Empire Mill, who were made defendants by the complaint, from proceeding at law upon their respective judgments; and further ordering that a copy of that injunction and the affidavits upon which the same was granted should be served upon each of the said defendants, their attorney or attorneys, within eight days from the date thereof. On the 22d of April, 1851, at a special term of the supreme court, in Oneida county, Mr. Justice Gridley, in the suit of *Isaac Maynard* v. *The Empire Mill*, granted an injunction against the defendant, its officers, &c. to restrain them

from disposing of any of the property, &c. belonging to the defendant, and referring it to Othniel S. Williams to appoint a receiver in the cause, " to have the charge and control of the property, real and personal, effects and choses in action of every name and nature of the said defendant," &c. But it was provided that said receiver should not be at liberty to sell or dispose of any of the property or effects of the said defendant except the manufactured articles belonging to the defendant, but should keep and take care of the same, and should continue to conduct the affairs and business of the defendant, and retain the proceeds of all such sales of manufactured articles, to await the further order of the court. And it was further ordered that the said receiver should do nothing in hostility to the rights of any of the judgment or execution creditors of the said defendant; and that the receiver might apply from time to time to the court for further directions touching his duties as such receiver. The referee appointed Samuel R. Garvin of Utica, receiver, who gave the requisite sureties, and entered upon the duties of the office. The motion at the New-York special term, for the appointment of a receiver, made by the plaintiff Dambman, was resisted upon the affidavits of the managing agent of the Empire Mill, and of several of the attorneys of the respective creditors who had entered up judgments against it; and the decision there made, being in favor of the plaintiff, Dambman, an appeal was taken on behalf of the defendants to the New-York general term of the supreme court.

The complaint of the plaintiff, Dambman, was " on behalf of himself and all others the unsatisfied creditors of the defendants, the Empire Mill, who shall come in and seek relief by, and contribute to the expenses of this action :" and it alledged that the defendants the Empire Mill were justly indebted to him in the sum of $8000, with interest thereon from the 5th of March, 1851, upon two certain drafts or bills of exchange in writing, theretofore made by the said defendants the Empire Mill, E. C. Hamilton their treasurer, at the city of New-York, and bearing date the 2d day of September, 1850 : copies of the bills were set out in the complaint, as follows :

Dambman v. Empire Mill.

"$4500.                                New-York, Sept. 2d, 1850.

Six months after date, pay to the order of myself, forty-five hundred dollars value received, which place to account of Empire Mill.

E. C. HAMILTON, Treas.

To Austens & Spicer, New-York."

The second bill was precisely like the other, except the amount, which was $3500. Austens & Spicer accepted both the bills; but afterwards, when the bills were presented for payment, at maturity, they refused to pay them. The bills, before they became due and payable, were duly indorsed and delivered by the defendant, the Empire Mill, by E. C. Hamilton, their treasurer, to the plaintiff. In the affidavit of Frederick Hollister, the managing agent of the Empire Mill, one of the by-laws of that corporation, in respect to the rights and duties of the treasurer, was set forth; and it was denied that E. C. Hamilton, the treasurer of the Empire Mill, had right or authority as the treasurer of said mill to draw or sign the drafts, in the said complaint mentioned; or that they were the drafts of the Empire Mill; or that the Empire Mill was indebted to the plaintiff, by reason of those drafts. On the argument of the appeal, before the court, at the general term, various objections were raised, on the part of the defendants, to the decision made at the special term; but the two prominent objections, only, were considered by the court, in giving the opinion, viz. *First.* That the plaintiff, being a creditor at large, and not a judgment and execution creditor, could not commence his suit and ask for a receiver. *Second.* That if he could, still he had been anticipated by the Maynard suit.

*H. Denio,* for the defendants, appellants.

*B. F. Butler,* for the plaintiff, respondent.

*By the Court,* EDMONDS, P. J. There are two prominent objections presented on this appeal to the order made at the

special term. *First.* That the plaintiff being a creditor at large, and not a judgment and execution creditor, can not commence his suit, and ask for a receiver. *Second.* But if he can, still he has been anticipated by the Maynard suit.

The first objection is founded on the idea that because the statute, (2 *R. S,* 463, § 42, [sec. 36,]) confers upon a creditor, who has a judgment and an execution unsatisfied, the power of applying for a receiver and a dissolution of the corporation, that therefore a creditor who has not obtained a judgment has no such power. It is true that a creditor at large could not, under this section, apply by petition for a receiver; but it by no means follows, that he could not by a suit to be brought, avail himself of the other powers of this court in respect to corporations. Those powers, as defined in this article of the revised statutes, (*part* 3, *ch.* 8, *tit.* 4. *art.* 2.) are by no means, in all cases, limited to judgment creditors; but for various purposes enumerated therein, may be exercised in behalf of general creditors. The judgment creditor has a peculiar privilege, by virtue of his unsatisfied execution, of having the property of the corporation sequestrated, a receiver appointed, and its property distributed among its creditors. At the same time, the attorney general may institute proceedings, in certain cases, for a dissolution of the corporation. And, at the same time, a general creditor may institute proceedings, either to restrain the improper exercise of certain powers, or to procure payment of his debt. The instituting of either of these proceedings does not, by any means, preclude the others, but each creditor may pursue his own remedy, as given him by the statute, and according to the circumstances of each case.

The court might, in the exercise of its general controlling power over its proceedings, restrain the prosecution of an unnecessary number of suits, and confine its action to some one suit, where full and adequate relief could be given to all parties; but that would be a matter resting in its discretion, and none of the parties would have an absolute right to demand that it should be done, except in one case; and that would be, where

there should be a final decree in some one of the suits, for a final account and distribution among all the creditors ; in which case a creditor would not be allowed to bring a separate suit, because he could make himself a party to the other suit, and have all the benefit of the decree. But, with this exception, the restraining of other suits, or allowing one suit to answer for all, would be in the discretion of the court.

Until the event, when alone, other creditors than the plaintiff would have a right to control the suit, I do not see any thing to prevent any number of judgment creditors from instituting separate suits ; and much less could the mere initiation of a proceeding, by a judgment creditor, under § 36, be a bar to proceedings by the general creditor under § 33, or § 39 or § 44 ; or to proceedings by the attorney general under § 38 or § 40.(a) Even then, if Maynard's suit was, in reality, and in good faith, prior to this of Dambman's, it by no means follows that it is a bar, or that it ought to operate as such, in preventing the appointment of a receiver. The only question is, whether it would be proper for the court, in the exercise of its sound discretion, to allow Maynard's suit so to operate, and deny a receiver in this suit. There are two considerations which influence me to say, that such would not be proper action in the present stage of these proceedings. One is, that Maynard's suit is not for the benefit of all the creditors ; and although it could be made so, by amendment, yet that is at the option of Maynard, whether he will amend or not. And the other is, the restriction upon the powers of the receiver, in Maynard's suit, which forbids him to do any thing in hostility to the rights of any of the judgment or execution creditors, and thus deprives him of a power which may be most essential to the creditors ; that, namely, of inquiring into the validity of the demands which claim a preference.

This view of the case renders a minute examination of the

(a) These references are to the sections as numbered in the *second* edition of the *revised statutes;* in the *third* edition they are designated as §§ 42, 39, 45, 50, 44, 46.

Brockway v. Burnap.

other questions presented unnecessary; for it regards the order of the special term, extending the receivership to this suit, as valid, even if Maynard's suit was prior in point of time and of right.

The order must be affirmed, with costs.

[NEW-YORK GENERAL TERM, December 1, 1851. *Edmonds, Mitchell* and *King*, Justices.]