## Case No. 4,956.

### FOSDICK v. STURGES.

[1 Biss. 255;[1] 3 Phila. 312; 15 Leg. Int. 404; 2 Wkly. Law Gaz. 401.]

Circuit Court, S. D. Ohio. Oct. Term, 1858.

Worthington & Matthews, for plaintiff.
Mr. Goddard, for defendant.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

McLEAN, Circuit Justice. This action is brought to recover the sum of twenty-four thousand dollars, which was paid by the plaintiff to the defendant for stock in the Hillsboro and Cincinnati Railroad Company, on the ground of fraud.

The declaration states that on the 3d of January, 1853, the Hillsboro and Cincinnati Railroad Company were engaged in extending and maintaining their line of road to the Ohio river, at or nearly opposite Parkersburg, in Virginia; that the issue and disposal of the stock were vested in the directors for the time being; that Sturges, the defendant, entered into an unlawful scheme and device with the board of directors, who issued a bond for seven hundred and fifty thousand dollars, convertible into stock at par, with an understanding that the bond should be discharged by another bond for the sum of five hundred, twenty-one thousand, six hundred and seventy-seven thousand dollars; that Sturges was elected to convert the bond of the directors into stock, and that they issued to him certificates for fifteen thousand shares of stock, at fifty dollars per share, amounting to the sum of seven hundred and fifty thousand dollars; that in payment for such stock as had previously been agreed upon, he executed a bond to the company for five hundred, twenty-one thousand, six hundred and seventy-seven dollars, payable when called for; leaving the sum of two hundred and twenty-eight thousand, three hundred and twenty-three dollars less than the par value of the stock; that the defendant represented himself to be the lawful holder of the stock, so issued to him, and he proposed to sell to the plaintiff six hundred shares of the stock, at forty dollars per share, amounting to the sum of twenty-four thousand dollars; and that the plaintiff believing he was the lawful holder of the stock, purchased from him the six hundred shares, having no notice to the contrary.

The declaration further avers, that Sturges was not the lawful holder of the stock, his subscription for the same being void, as having been made in violation of the charter, for a less price than fifty dollars per share, as fixed by the charter; and the declaration also alleges, that Fosdick received from Sturges an assignment of the six hundred shares of stock, which on application were transferred to him on the books of the company, and a new certificate issued to him, which he brings into court, to be disposed of according to law.

To this count in the declaration a demurrer was filed.

There are other counts in the declaration, but they are not before the court on the demurrer.

The contract declared on, has been executed. Sturges assigned to Fosdick the six hundred shares of stock, and he paid for them twenty-four thousand dollars; and on the presentation of the assignment to the company, the stock was regularly transferred to him on its books. He had not, it seems, from the count demurred to, discovered the alleged frauds until after he had purchased the stock, and it had been regularly transferred to him, on the books of the company.

In the case of Sturges v. Stetson [Case No. 13,568], at the present term, it was held that the directors of the company had no power to receive subscriptions for stock at a less price per share than was fixed in the charter; and consequently, that notes given for stock, so obtained, could not be enforced. Such a subscription was held to be not only in express violation of the charter, but a fraud upon prior stockholders. Sturges, though holding by certificate his fifteen thousand shares of stock, regularly, to all appearance, entered upon the books of the company, was liable on the application to a court of chancery by a prior stockholder, to have his number of shares reduced to their par value.

Fosdick, on the demurrer, must be taken to be a bona fide purchaser of the six hundred shares of stock, without notice. The proceedings on the books of the company, in regard to the subscription of this stock by Sturges, can give rise to no suspicion of unfairness. The bond for seven hundred and fifty thousand dollars to be converted into stock, at the pleasure of the holder, in a limited time, was not out of the ordinary mode of business; and the issuing of the fifteen thousand shares on the surrender of the bond, could awaken no inquiry. The entire transaction in regard to the subscription of this stock, was apparently and clearly within the corporate powers of the company. Under such circumstances it appears to me that a bona fide purchaser of the stock could enforce a transfer of it on the books of the company.

The agents of a corporation have no license for the commission of wrongs. Their powers are limited, but when they circumvent and mislead to his injury an innocent individual, without knowledge to awaken his suspicion, the corporation is liable.

But the right to the six hundred shares of stock by Fosdick was admitted by the directors, and a regular transfer of it to him was entered on their books. And this, it is said, was a consummation of his right, by which he acquired all he contracted for, and all that he expected to receive.

It is true the prospective completion and business of the road have not been realized. But this is a disappointment common to all persons who have engaged in such enterprises. They have given their time and money to objects which have advanced beyond all other improvements the agricultural, the commercial, and the social interest of the country; but they have generally realized heavy pecuniary losses. But these constitute no ground for the rescis-

sion of contracts, or of equitable relief, unless fraud be established.

In the illegal issue of the stock, Sturges and the company participated, and they may be equally responsible, to a bona fide purchaser. But if it be admitted that the company, under the circumstances, may be liable to Fosdick, does it follow that he may not exercise his own discretion in regard to the remedy? This seems to be a matter for the determination of the party rather than the court.

The frauds charged against Sturges consist in his participation in the fraudulent issue of the stock, declaring that it had been lawfully issued; in his false and fraudulent representation to Fosdick that he was the lawful owner of the stock, through which false and fraudulent assurances Fosdick was induced to purchase the six hundred shares. These averments of fraud, are all admitted by the demurrer, and must be taken as true.

But, if the frauds alleged do not materially affect the rights of the plaintiff, he is not entitled to a remedy against the company or Sturges. Of the fifteen thousand shares of stock, subscribed by Sturges, at the par value, he paid for only ten thousand four hundred thirty-three and a-half shares; leaving four thousand five hundred sixty-six and one-half shares, for which he paid nothing. These amount much nearer to the one-third than the one-fourth of the fifteen thousand shares subscribed, and, at the par value of these shares, they amounted to the sum of two hundred and twenty-eight thousand six hundred and seventy-seven dollars.

It was held in Stetson's Case, that although the directors in receiving subscriptions for shares of stock, were bound by the price per share fixed in the charter, yet stock when once subscribed became property, and could be sold at any price fairly agreed upon, and that the assignment would convey the shares in full. The six hundred shares of stock were purchased by Fosdick at forty dollars per share, but each share was transferred, at its par value of fifty dollars. On the payment of twenty-four thousand dollars, Fosdick received in stock thirty thousand dollars, and any sum short of that amount will be so much less than he purchased and paid for.

There can be no question that any stockholder, prior to the subscription of Sturges, could, by legal coercion, reduce the stock subscribed by him to the number of shares he paid for, at their par value. And the same principle would apply to all the assignees of the stock, by Sturges, who had notice. This rule applied to Fosdick, would reduce his stock some one hundred and seventy-five shares.

But, if the rule should not apply to Fosdick, he being a bona fide purchaser, still the shares not paid for by Sturges must

be distributed and apportioned among the prior stockholders, lessening the stock in value near one-quarter of a million of dollars.

In whatever light this question may be considered, it appears to me, there can be no escape from the conclusion, that the frauds complained of in the declaration are so material in their effect upon the rights of the plaintiff as to entitle him to a rescission of the contract, for the purchase of the six hundred shares of stock, and an action against Sturges for the money paid. The frauds, as alleged, are admitted to be true.

New issues may be raised, and a new aspect given to the case, in its future progress. But, as it now stands on the demurrer, with all the averments of the declaration admitted to be true, I feel bound to overrule the demurrer.