WARREN CURRIER, APPELLANT, *v.* THE NEW YORK, WEST SHORE AND BUFFALO RAILROAD COMPANY AND OTHERS, RESPONDENTS.

*Corporation — action by a stockholder against the corporation and directors, to restrain waste of its property — when a demand upon the corporation to bring the action need not be made.*

A stockholder and bondholder of an insolvent corporation may maintain an action against the corporation, its directors and other persons, to rescind an unlawful contract made by certain of the defendants with the corporation, and compel the wrong-doers to account for property and securities of the corporation wrongfully received from it, without first making a demand upon the corporation to bring an action to redress the wrongs complained of, where it appears from the facts alleged that the corporation is obviously unable to act by reason of its directors being under the control of the very persons who are alleged to have been guilty of the wrongful acts, and who are made defendants in the action. (DYKMAN, J., dissenting.)

APPEAL from an order sustaining demurrers interposed by the defendants to the complaint, and from a judgment entered thereon.

Several grounds for the demurrers were alleged therein, but the only one considered in the court below, and upon this appeal, was as to whether or not the facts alleged constituted a cause of action.

*John L. Hill,* for the appellant.

*P. B. McLennan,* for the Railway Company and Porter **and** others, directors, respondents.

*Howard Mansfield,* for the respondent Winslow.

*Otto T. Bannard,* for the respondents Bard & Studwell.

*Bard & Studwell* and *Thomas Thacher,* for defendant Green, individually, and Canda.

PRATT, J.:

An examination of the complaint in this action has led me to the conclusion that the demurrers thereto were improperly sustained. The plaintiff is a stockholder and bondholder of the West Shore Railroad Company, and alleges divers acts of official misconduct by

some of the defendants (who are directors), in the management and disposition of the funds and property committed to their charge. It also alleges that the contract for construction, etc., was fraudulently made between the North River Construction Company and the Railroad Company, and that it was and is void as being a mere cover for the issue of stocks either for no consideration or for a consideration less than its par value. In substance it states that defendants Winslow, Woerrishoffer and Porter, with their associates, in some way acquired the control of the board of directors of the railroad company and filled it with their creatures and instruments; that they then conceived the design of constructing the road and thus making large profits for themselves and their associates; that they *expected* to derive their profits from the acquirements of lands for right of way, depots and buildings, and in the construction of its road, furnishing its equipment, etc.; that, in pursuance of their design, those defendants and their associates organized the North River Construction Company under the laws of New Jersey, with a capital of $500,000, all of which they held; that they then had the certificate for its stock transferred to the Central Trust Company *in trust*, the voting power thereof to be exercised by them, Winslow, Porter and Woerrishoffer; that they constituted a majority of its directors; that they then increased its stock to $10,000,000, the additional $9,500,000 being issued to the trust company in trust, and the voting power thereof to be exercised by them; that leaving these in the control of the construction company they proceeded to make a contract in its name with the railroad company, by which the construction company in form agreed to expend $1,000,000 in payment for lands, $1,000,000 for buildings, etc., and $4,000,000 for rolling stock for the railroad company, and to build its road from Cornwall to Oneida (with an option to build to Buffalo), at $100,000 per mile of single track, and $200,000 per mile for double track, the sums being payable in stock and bonds of the railroad company at par, or from the proceeds of the sale thereof; that these securities were to remain in the hands of financial agents of the railroad company, and should be either delivered to the construction company, or be sold by the financial agents of the railroad company, the proceeds then being payable to the construction company as the work progressed; that the railroad

company should not issue or dispose of any securities without the consent of the construction company.

If it was the fact that those defendants did control the actions of the railroad company, either through their own acts or those of their associates as directors thereof, it is plain that since· they also controlled the construction company they were simply contracting with themselves, and that the railroad company was helpless in their hands.  It requires no argument to demonstrate that a contract made under such circumstances was presumptively fraudulent. (*N. Y. Cent. Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 N. Y., 85; *Duncombe* v. *N. Y. H. and N. R. R. Co.*, 84 N. Y., 190, 198; Story's Eq., §§ 321, 322, 323, 317–320, 246; *Wardell's case*, note 1 Am. and Eng. R. R. Cases, 425, 426; *St. James. Church* v. *Church of Redeemer*, 45 Barb., 356), and that the railroad company might, at its election, treat it as void and repudiate it.   (*Gilman C. and S. R. R. Co.* v. *Kelly*, 77 Ill., 416; *Thomas* v. *Brownville, etc., R. R. Co.*, 2 Federal Rep., 877; *Wardell* v. *N. P. R. R. Co.*, 4 Dillon, 330; *Barnes* v. *Brown*, 11 Hun, 315; 80 N. Y., 535.)   But the complaint goes farther and alleges that the defendants Winslow, Woerrishoffer and Porter and their associates fraudulently conspired together to accomplish the contract, and thereby to acquire large profits which were to be distributed to the stockholders of the construction company as dividends.   It is obvious that, as between these managers and the railroad company, these profits justly belonged to, and ought to have been saved for, the latter.   They could not then be directed into the hands of persons who stood in relations of trust to the railroad company, nor into the hands of others who should receive them by means of the misconduct of the directors, who were either their instruments or were acting in collusion with them.

Assuming these allegations to be true, I have no doubt that both the making and performance of the contract was a fraud upon the railroad company, and that every director who participated in the scheme was guilty of official misconduct, by which the resources and property of the railroad company were wrongfully used, and that they and every person, whether the construction company or defendants Winslow, Woerrishoffer and Porter and their associates, irrespective of any actual profit which they derived by these means,

became liable to the railroad company for any injury which it sustained in this way. The acts were wrongs, and upon familiar rules all the *tort feasors* were jointly and severally liable for the injury, and the farther progress of the injury was remediated by an injunction.

But this is not all of the plaintiff's case as stated in the complaint. It alleges that the contract contained a clause by which the construction company was relieved from all liability whatever upon its mere *application* of the proceeds of the securities towards the object specified by the contract. In other words, that it was not bound to build a railway for this railway company, nor to furnish any lands, buildings or railway stock, but simply to apply the proceeds of the stock and bonds, so far as they would go *in that direction*, with the right to keep any surplus as a profit. If this was the fact, it is difficult to see how the contract created anything more than an agency or trust to receive and apply the proceeds of the securities for the benefit of the railway company, in ways particularly specified, with the right to hold the entire surplus as a commission, in case the funds thus raised were more than sufficient for the purposes provided in the contract. There was no restriction by which the stock was to be sold for par, and the allegation is that the plan was to issue all the stock and bonds to the construction company. If that course was pursued, the only consideration therefor would be the promise of the construction company to apply the proceeds *pro tanto.* The allegation is that this was a mere plan by which to evade the statute, which requires that stock shall not be issued except at par in *money* or *money's* worth. If that was true, and that must be assumed on this demurrer, the contract was not only voidable, but absolutely void. (*Fisk* v. *C. R. I. and P. R. R. Co.,* 53 Barb., 515; *Sturges* v. *Stetson,* 1 Bissell, 246, 249; *Sawyer* v. *Hoag,* 17 Wall., 619; Green's *Ultra Vires,* 153; *Williams* v. *Western Union Tel. Co.,* 93 N. Y., 190; *Count P. G.* v. *Morris,* 7 C. B. [N. S.], 588; 97 E. C. L., 586, 597; *Fosdick* v. *Sturges,* 1 Bissell, 255; *Henry* v. *Vermillion and A. R. R. Co.,* 17 Ohio 187; *Tasker* v. *Wallace,* 6 Daly, 364; *Neuse River N. Co.* v. *Comrs. of Newbern,* 7 Jones' Law, 275; *Knowlton* v. *Cong. and E. S. Co.,* 57 N. Y., 542; Pierce on Railroads, 76; Redfield on Railways, 558.) And all moneys thus realized and wasted were proper

charges against persons who participated in the wrong, whoever they were.

The complaint further alleges that defendant Green, who was not a director, was a party to all these plans and wrongful acts; that the construction company became insolvent, and that the defendants, desirous to cover up the property thus wrongfully obtained from the railroad company, and to keep the control of its direction, fraudulently caused its board of directors to accept the railway property as completed when it was not completed, and when it required the expenditure of several millions of dollars to complete the same, and before the contract for construction could be held to be, in any proper sense, performed, and caused all its remaining stock and bonds to be issued to the construction company in pretended payment of fictitious and fraudulent claims of indebtedness, the object thereof, among other things, being to place the majority of the stock in the hands of defendant Green, to the end that he, being a party to the fraud, might control the direction of the railway company in the interest of said fraudulent designs; and to that end that they collusively and fraudulently procured said Green to be appointed receiver of the construction company under the laws of New Jersey, by the chancellor of that State, and that defendant Green thereupon took said stock and securities and carried them out of the State, and as such receiver proposed to vote upon the stock and make use of the bonds and to control the railway company in the interest of the wrong-doers. It is now said that defendant Green is liable for this act only as receiver, even if it was wrongfully done.

If he took these assets as receiver he took them wrongfully and cannot hold or use them to the detriment of the railway company, and the same is true if he acted individually in this way. The complaint charges him individually with conspiracy resulting in injury to this railway company. This is enough. It alleges that he wrongfully, knowing that the construction company was not entitled to this stock, took and carried it way. If he did this, it matters little in what capacity he was acting.

The complaint alleges that other defendants have become new directors of the railway company, but that they have approved and are now engaged in carrying out these schemes of fraud. If this

is true their conduct is also a matter of judicial investigation, and if injury has resulted from their action or inactivity in respect of these matters, they are liable for any loss which may have been sustained by such misconduct. We thus reach the technical questions raised upon this agreement. I have no doubt of the right of a stockholder to file a bill for relief against the wrongs charged. (*Butts* v. *Wood*, 37 N. Y., 317; *Greaves* v. *Gouge*, 69 id., 155; *Kent* v. *Quick Silver Mining Co.*, 78 id., 159; *Sturges* v. *Stetson*, 1 Phila., 304; 1 Biss., 246; *Williams* v. *Western Union Tel. Co.*, 93 id., 640; *Asbury R. C. and I. Co.* v. *Riche*, 14 Eng. R. [Moak's Notes], 81–85; *Duckett* v. *Gover*, 22 id., 655.) Nor is the right of a mortgage creditor doubtful in such a case. (*Conro* v. *Port Henry Iron Co.*, 12 Barb., 27, 58, 59; Story's Pleadings, § 99; *Dambman* v. *Empire Mill*, 12 Barb., 341, 345; *Innes* v. *Lansing*, 7 Paige, 584; *Mickle's Case*, 11 id., 118; *Conro* v. *Gray*, 4 How. Pr., 166; *Galwey* v. *U. S. Steam Sugar Co.*, 36 Barb., 256; Story Eq., 827, 835, 851.) Every bondholder has the right to insist that every other bond shall represent value, and certainly that it shall be lawfully and honestly issued. It is insisted that no stockholder or creditor has a standing to sue until a demand has been made upon the corporation to bring an action to redress the wrongs complained of. It is doubtless a general rule that a *cestui que trust* cannot maintain an action which ought to be brought primarily by the trustee, unless there shall have been a demand upon the trustee. But this does not apply in a case where the trustee is obviously unable to act by reason of being under the control of the very persons who must be the defendants in the proposed action. It would be useless to require any such idle and meaningless formality. (*Brinckerhoff* v. *Bostwick*, 88 N. N., 56; *Gray* v. *N. Y. and Virginia S. S. Co.*, 3 Hun, 383; *Parker* v. *McKenna*, 11 Eng. R. [Moak's Notes], 484; *Hand* v. *Atlantic Bank*, 55 How., 231; *Mussina* v. *Goldthwaite*, 7 Am. R., 281; *Morgan* v. *Railroad Co.*, 1 Wood's Circt. R. [U. S.], 15; *U. S. Trust Co.* v. *West Shore Railroad Co.*)

Again it is said that the stockholders must stand upon the right of the corporation to rescind, and hence must do all that the corporation would have been obliged to do in order to obtain the standing in a court of equity. The answer is that upon the allegations of this complaint the corporation itself would not have been

obliged to do anything. It has obtained nothing from defendants under the contract. According to the allegations of the complaint the defendants have all the while been wrongfully getting and keeping the property of the corporation. If the complaint is true the company has received nothing from the defendants save that they wrongfully took from it to begin with. The action is brought to get back the surplus thus improperly abstracted, to have an account for that purpose, and to enjoin farther progress of the wrongs. I cannot doubt the propriety of such an action by a stockholder or creditor when the corporation is insolvent. If the right did not exist it would be difficult to fix bounds beyond which the director of a corporation might not go in dealing with the property of which they were never trustees.

The judgment should be reversed with leave to defendants to answer within twenty days on payment of costs.

Bartlett, J. :

I concur with Mr. Justice Pratt in the result. I may add that the recently reported case of *Barr* v. *New York, Lake Erie and Western Railroad Company* (96 N. Y., 444) bears adversely to the respondents on some of the most important points discussed on this appeal.

Dykman, J. (dissenting):

The defendants demurred to the plaintiff's complaint in this action and obtained a judgment in their favor, from which the plaintiff has appealed. My associates find the complaint good as to some of the defendants, and bad as to some others. The demurrer is to the entire complaint which professes to set forth but one cause of action, and if the complaint be vicious on any point reached by the demurrer it must fall as an entirety.

Independent of this, however, so long as the doctrine of the court of appeals, as announced in the case of *Greaves* v. *Gouge* (69 N. Y., 157), continues in force it will condemn this complaint. It was there decided that an action for injuries caused by the misconduct of an officer of the corporation must be brought in the name of the corporation, unless it or its officers on being applied to for such purpose by a stockholder refuse to bring such action.

The same doctrine was substantially reiterated by the court of

appeals in the case of *Brinckerhoff* v. *Bostwick* (88 N. Y., 56) and nothing contained in the case of *Barr* v. *New York and Canada Railroad* (96 N. Y., 448) is at war therewith. In this last case the opinion of the court was prepared by the same judge who wrote the opinion in the case of *Greaves* v. *Gouge* (*supra*); and this last case is not even mentioned in the opinion. Assuming, therefore, that the case of *Greaves* v. *Gouge* still furnishes the law for the determination of this case, the plaintiff cannot maintain this action under his present complaint. Besides this, the plaintiff makes no case on the merits; there is no allegation of wrong, or falsehood, or fraud or individual intrigue for private advantage. The legality of the contract against which so much complaint is made is fully established by the decision of the court of appeals in the case of *Van Cott* v. *Van Brunt* (82 N. Y., 535).

My conclusion on the whole case is that the judgment appealed from should be affirmed.

Judgment for defendants upon demurrer reversed, with costs, except as to judgments in favor of Canda, Bard & Studwell, which are affirmed, with costs.