BEACH, receiver, &c.. *vs.* SMITH.

A payment in money, *eo nomine*, at the time of subscribing to the capital stock of a rail road company, is not necessary to the validity of the subscription, under the 4th section of the general rail road act, which requires the payment of ten per cent in money, by each subscriber, at the time of subscribing.  A subsequent payment will operate as a waiver of the condition, and the party making it will be considered as recognizing his original liability.

Where a party, while engaged as an agent of a rail road company, in procuring subscriptions to the capital stock, receiving the first payment of ten per cent thereon, and performing other services for the company, for which it was indebted to him, made a subscription of $500 to the capital stock, on his own behalf, without, however, in form, paying the ten per cent thereon, to himself or any one else, at the time, but subsequently, on calls for installments being made, by the directors, he presented an account to the company, making a charge of $450 for his services and expenses as agent, and crediting the sums paid to him by the subscribers to the stock, and also the original ten per cent on his own subscription, and the amount of a call of ten per cent then payable, and struck a balance against the company of $200, which account was allowed, and the balance paid to him, by the treasurer; *Held* that under the circumstances, it was not necessary for the party to pay to himself, as agent, ten per cent, at the time of subscribing, in order to render his subscription valid and binding; but that if there were any defect in such subscription, he by his subsequent conduct ratified the subscription and recognized his continuing and existing liability thereon, and was bound thereby.  W. F. ALLEN, J., dissented.

Beach *v.* Smith.

APPEAL from a judgment rendered at a special term, after a trial at the circuit. The Ogdensburgh, Clayton and Rome Rail Road Company was organized on or about the 22d day of April, 1853. The defendant was employed by it to procure subscriptions to the capital stock of said rail road company, and to negotiate for procuring rights of way over lands necessary to be appropriated for said road. Being so engaged, and on the 2d day of July, 1853, the defendant himself made a subscription to the stock of the company of five hundred dollars. About the same time he procured subscriptions to be made by other persons than himself, and in some instances received from the subscribers as the agent of the company the payment of ten per cent in cash, by law required to be paid at the time of subscribing. The directors of the rail road company afterwards, and in October, 1853, made four several calls upon the subscribers to the capital stock of the company, each of ten per cent, falling due at intervals of three months, the first of which became due February 1, 1854. On the 25th of February, after the first call became due, the defendant rendered an account in writing to the company, signed by him, in which he charged the company for his services, subsequent to April 1, 1853, as agent in procuring $7700 subscriptions to the capital stock of the company, in procuring right of way in Lewis and Oneida counties, and personal expenses therein, the sum of $410. He credited the company as for cash received for original ten per cent paid him by subscribers to the company's stock, including his own subscription, and for the call due February 1, 1854, on his own subscription and that of another subscriber, in all $210, and claimed a balance due him from the company of $200, which latter sum was paid to said Smith by the treasurer of the company and receipted by said Smith on the 27th day of February, 1854.

This action was brought by the receiver of the rail road company, appointed at the suit of a judgment creditor of the company, to recover of the defendant several calls on his sub-

scription to the stock of the company, falling due subsequent to February 1, 1854. The defendant insisted that his subscription was not obligatory upon him, and that the plaintiff could not recover, for the reason that, as he alleged, ten per cent in money was not paid by him to the company at the time of his subscribing, upon the amount of his subscription.

The cause was tried at the Oneida circuit. His honor, the circuit judge, upon these facts held as conclusions of law: 1. That upon the facts the plaintiff could not recover. 2. That the payment of the ten per cent upon the defendant's subscription, shown by his account rendered to have been made by applying the same on his account for services, was not a sufficient compliance with the statute, and did not make his subscription obligatory upon him. 3. That the payment of an installment subsequent to the first ten per cent, shown by the defendant's account rendered to have been made by applying the same on his account for services, was not such a ratification and recognition of his subscription as made it obligatory upon him. 4. That the defendant's subscription was void. 5. That the plaintiff must be nonsuited, and he accordingly ordered a judgment of nonsuit; from which judgment the plaintiff appealed to the general term.

*T. Jenkins*, for the appellant. I. The defendant was *agent of the company* to procure subscriptions, with authority also to receive from subscribers the ten per cent in money required to be paid at the time of subscribing. His agency commenced April 1, 1853. He subscribed July 2, 1853. He obtained subscriptions to the amount of $7700, and received in many instances the ten per cent in cash paid by the subscriber. Payments to him were payments to the company; from the moment he subscribed, he was, as between himself and the company, chargeable for cash received by himself on his own subscription to the amount of ten per cent thereon. It was money in his hands belonging to the company equally with the ten per cent paid to him by other subscribers. (*Highland*

Beach *v.* Smith.

*Turnpike* v. *McKean*, 11 *John. Rep.* 98. 1 *R. S. 4th ed.* 1220, § 4. 7 *Barb.* 567–72. *Id.* 167. 21 *Wend.* 211–18. 1 *Kern.* 102.)

II. The defendant cannot take advantage of his own wrong to avoid legal responsibility to the creditors of the rail road company. He was the agent of the company; he knew it was necessary that ten per cent should be paid in money at the time of subscribing; he subscribed, and is estopped from denying that he did the other act necessary to make his subscription obligatory.

III. It is not the true meaning of the last clause of section 4 of the general rail road act, that unless the subscriber pays ten per cent in money to the directors of the company at the time of subscribing, his subscription shall be *void.* Certainly not as against creditors of the company who have dealt with it on the faith that the apparent subscriptions to the capital stock are real.

IV. At most, the contract of subscription was *voidable,* while the ten per cent was unpaid. When paid, though subsequent to the subscription, the contract became obligatory and binding on both parties, equally as if at the time of such subsequent payment, the subscriber retraced with his pen the letters of his signature on the subscription book.

V. On the 28th day of February, 1854, the defendant, if not before, paid ten per cent in money to the directors of the company on his subscription; that is the legal effect of the transaction which then took place; Smith paid the company two hundred and ten dollars in money, including his first ten per cent, and the company paid him at the same time four hundred and ten dollars in money in full of his account for services. The legal effect of the transaction was the same as if Smith had given the company his check for $210, and received back theirs for $410.

VI. But, beyond this: Smith has not only ratified the original act of subscription by subsequent *payment* of the first ten per cent, but he has gone farther. If that payment was

not sufficient to oblige him to go farther when called upon, he voluntarily went farther, and again ratified the original act of subscription by paying the call of ten per cent due February 1st, 1854. It was not necessary that *that payment* should have been in money to be a good and binding payment. After the payment had been made on the one side and received on the other, neither party could deny the obligation of each to the other. Smith was entitled to the rights of a stockholder, and subject to the liabilities of a stockholder. Smith has *actually paid,* not only the first ten per cent required to be paid at the time of subscribing, but he has *actually paid* another ten per cent upon the subscription. Both payments were accepted and received by the company. If the court should be of the opinion that by reason of the mode in which the first ten per cent was paid, it was not a strict compliance with the act, and that there was still a *locus penitentiæ* remaining to Smith, he conclusively waived it, and ratified and reaffirmed his subscription by payment of the call due February 1, 1854.

*G. W. Smith,* defendant, in person. I. Ten per cent was not paid at the time of making the subscription, and the contract of subscription was therefore illegal and void, and no recovery can be had on the same. (1 *R. S.* 1222, *4th ed.* § 4. *Laws of* 1850, *ch.* 140, § 4. *Crocker* v. *Crane,* 21 *Wend.* 211.) This is illegal and void, as being, (1.) Against the express language of the statute. (7 *Wend.* 31, 276. 20 *John.* 397.) (2.) As against its spirit and policy. (*Id.* 4 *Hill,* 424. 10 *Wend.* 431.) There can be no soundness in the suggestion that the statute is directory merely. Language seems to be employed to exclude any such argument. It is first said that the subscriber shall pay the ten per cent. The clause is then added, expressly prohibiting the taking of any subscription where the ten per cent is not paid. The idea of a directory statute can never be applied to the case of a prohibition, where a thing is positively forbidden to be done. It is only

applicable to cases where affirmative directions are given. (*Smith's Com.* 780, &c.)

II. There can be no ratification or affirmance of the contract, that can make it binding. (1.) The difficulty is not, that the contract was not clearly made, nor that it was not fully proved, and this is all that a ratification can establish, but that being so made and proved, it is in and of itself illegal and void. (2.) An illegality can never be ratified or affirmed, except by a legislative act removing the prohibition. The taint remains, and extends through all renewals or changes of the original contract. (*Hook* v. *Gray*, 6 *Barb.* 398. *Nellis* v. *Clark*, 4 *Hill*, 424. 1 *id.* 11, 16. 3 *Denio*, 70. 3 *Seld.* 328.)

III. Corporations must acquire their franchises and exercise the powers granted them in strict pursuance of the statute creating them. They have no original capacity, like individuals, to made contracts, and their contracts can only be such as the statute enables them to make, in essence, mode and form. Unless the prescribed mode be followed, no valid contract is made. (2 *Cranch*, 127. 4 *id.* 403. 9 *id.* 64. 4 *Wheat.* 77. 5 *id.* 116. *Smith on Stat.* § 679, 80.) 2 *John.* 109. 7 *Cowen*, 462. 13 *Peters*, 587.)

IV. The clause in question is a statutory prohibition upon the company; they alone are in fault. The defendant could maintain his action upon the contract, but the company cannot sustain one against him. (*Tracy* v. *Talmage*, 4 *Kern.* 179, 384. *Curtis* v. *Leavitt*, 1 *E. P. Smith*, 9.)

BACON, J. I should be very well satisfied if I were able to uphold the judgment rendered by my brother Allen in this case. The unfortunate rail road enterprise which the plaintiff, as receiver, represents, has already swallowed up, past recovery or redemption, several hundred thousand dollars of the hard earnings of the subscribers to the stock, without the least hope of any adequate return or indemnity. I do not wonder at the reluctance with which these calls are met, and am disposed to listen favorably to any fair and legitimate de-

fense that can be made to their enforcement.   But unless we are prepared to abandon some of the doctrines upon which we have proceeded, and the decisions we have made, both at special and general terms, I am unable to see how the defendant in this case can be exempted from liability.

The facts in this case, upon which the question of law arises, are undisputed, and are in substance these : that the Ogdensburgh, Clayton and Rome Rail Road Company was incorporated in April, 1853, and the defendant immediately thereupon became engaged as an agent for the company in procuring subscriptions, and negotiating for the right of way, and between that month and the 25th of February, 1854, procured subscriptions to the amount of $7700, and in several instances received the 10 per cent on the subscriptions thus obtained.   While thus engaged, and in July, 1853, he made a subscription on his own behalf of $500, to the stock of the company ; paying, however, nothing in form to himself or any one else upon such subscription.   Subsequently to this, calls for installments upon the stock of the company were made by the directors ; the first falling due on the 1st of February, 1854.   On the 25th of February, after this call was due, the defendant presented an account to the company, making a charge of $450 for his services theretofore rendered and expenses incurred in the course of his agency, and crediting the sums paid to him by the subscribers to the stock as such agent, and also the original 10 per cent on his own subscription, and the first call of 10 per cent, being all that was then payable, and struck a balance against the company of $200, in cash, which was allowed, and on the 27th of February paid to him by the treasurer of the company.

The 4th section of the general act rail road requires that every subscriber, at the time of subscribing, shall pay to the directors 10 per cent on the amount subscribed by him, in money, and forbids any subscription to be received or taken without such payment.   (*Laws of* 1850, *ch.* 140, § 4.)   The defendant insists that as 10 per cent was not paid by him at the time

Beach *v.* Smith.

of subscribing, in money, the contract of subscription was wholly void, and no recovery can be had thereon. The case principally relied upon to sustain this proposition, is *Crocker* v. *Crane,* (21 *Wend.* 211.) That was a suit instituted to recover upon a check given for a subscription to the stock of a rail road corporation, the charter of which provided that the company should receive no subscription "unless two dollars on each share subscribed be paid at the time of subscription." The marginal note of the reporter states, as a point decided by the court, that the company was not authorized to receive checks in payment of the sum required to be paid, but that specie, or its equivalent current bills of specie paying banks, must be demanded. Looking at the facts in that case and the opinion of the court, it is manifest that they intended to hold no such broad proposition as this. The evidence showed, clearly, that the check in question, among many others, was taken in lieu of uncurrent funds, and that it was well understood that the drawers had no funds in the bank, and that the checks would not be presented for some time for payment. Cowen, justice, after recapitulating the facts, says that on reading the evidence he feels no doubt that the whole was a mere evasion of the statute, and that the transaction was evidently the substitution of individual credit for cash payment. I think it clear that if the receiving of the check had been an isolated transaction unconnected with the understanding that there were no funds to meet it, it would have been held a payment, within the provision. Indeed Judge Cowen says, in so many words, "I do not deny that receiving an occasional check might have been a fair substitute." And he adds that checks are received because they operate as a mere transfer of money which a man has at his banker's. It cannot be doubted then that a check or sight draft on a banker would be a good payment in money, under the 4th section of the rail road act, where no suspicion attaches to the transaction and no pretense exists that the parties are practicing a sham. In the case of this same rail road against Davis, decided by this court at the

last April general term, we held that a sight draft, drawn by the defendant at Ogdensburgh, on a bank in the state of New Jersey, which the treasurer of the company subsequently received credit for, was equivalent to a payment in money at the time of subscribing, and a sufficient compliance with the requisition of the statute.

In the case of *Beach* v. *Hazard*, tried before me in September, 1857, it appeared that the defendant paid nothing at the time of subscribing, but that subsequently, after three calls had been made upon his stock, he gave his note for the ten per cent and the amount of the calls, and paid the note after maturity. The suit was brought to recover three other calls afterwards made, and I held and decided that the defendant was not discharged from liability on his subscription by his failure to pay ten per cent at the time of subscribing, but that the payment of the same, with the subsequent calls, operated as a waiver of the condition and a recognition of his continuing liability on his subscription. Judgment was accordingly rendered for the plaintiff for the subsequent calls, and the defendant acquiesced in the decision and paid the amount demanded in the suit. In the case of *The Utica and Black River R. R.* v. *Clarke*, which was before us on appeal at the last July term, it appeared that the defendant, on the trial, offered to show that he paid nothing at the time of subscribing, but gave merely a memorandum check drawn on a bank where it was, at the time, understood that there were no funds to meet it, but conceding that he had subsequently paid $400 in cash, which included the ten per cent and three calls on the stock. The referee rejected the offered evidence, on the ground that the subsequent payment on the subscription was an affirmance thereof, and rendered it valid and binding as if an original payment had been made. To this ruling there was an exception, and on appeal we affirmed the judgment; thus holding with the referee on this as well as on other questions involved in the case.

The points decided, and the principles recognized, in these

Beach *v.* Smith.

cases are, it seems to me, a conclusive answer to this defense. A payment in money, *eo nomine,* at the time of subscribing is not necessary to the validity of the subscription, and a subsequent payment will operate as a waiver of the condition, and the party making it will be considered as recognizing his original liability. At the time the subscription in this case was made by the defendant he had been for several months in the employment of the company, soliciting subscriptions and rendering other services, and was earning a compensation for which they were then indebted to him. He could have gone through the form of taking from one pocket the $50 which he was required to pay to himself, as agent of the company, on making the subscription, and then transferring it to the other as already earned in the service of the company and justly due to him; but it would have been a very idle ceremony. Indeed, according to the doctrine advanced in the case of *Highland Turnpike Co.* v. *McKean,* (11 *John.* 98,) even this ceremony would have been unnecessary. The defendant in that case was a commissioner to receive subscriptions to the stock of the Highland Turnpike Company, the charter of which provided that every subscriber should, at the time of subscribing, pay to either of the commissioners five dollars on each share by him subscribed. While the book was in the hands of the defendant as commissioner, he subscribed for twenty shares, paying, however, nothing at the time. This, says the court, was a valid subscription so as to entitle the defendant to the stock. "It would be a useless ceremony," say they, "for him to pay himself the money required to be advanced on his subscription."

But beyond this, when the defendant, in February, 1854, presented his account to the company, charging himself and crediting the company with not only the ten per cent but the first instalment called upon his stock, he, in the most express and emphatic manner ratified his subscription and recognized his continuing and existing liability thereon. It is a perversion of the language and intent of the section, it seems to me,

Beach *v.* Smith.

to insist that by the failure to pay the ten per cent at the instant of subscribing the subscription itself was thereby rendered utterly void, and that consequently there can be no affirmance or ratification that can make it binding. It is not like the case where a statute provides that a certain act shall be done, and declares that a failure to comply with a condition annexed to it shall render the act attempted to be done void, and discharge any right or liability sought to be derived from or attached thereto. There is no such provision nor declaration in this case. Nor was the defendant's contract void by reason of the doing or omission to do any thing that was *malum in se.* It was a perfectly lawful act not only, but for a public object that was apparently meritorious.

Assuming that by the omission to comply with the strict letter of the statute in not placing the money in his own hands at the instant he dropped the pen with which he made the subscription, the defendant could have repudiated the contract, and declined thereafter to fulfill any of its obligations; yet he chose to pay, subsequently, and not to disaffirm the contract; and it would be strange indeed if after this the law will interpose, and either ignoring or putting aside the voluntary act of the party recognizing his liability, declare that he shall not be bound because he omitted a ceremony in the beginning which he took the earliest opportunity which subsequently occurred to atone for and supply. When the defendant presented his account, in February, charging the company for his services and crediting the ten per cent and the first installment on his subscription, and received from them in cash the balance of his demand, the legal effect of the transaction was precisely the same as if he had given the company his check for two hundred dollars, being the amount due them, and received from the company theirs for $400, the entire amount of his account. No one would have doubted that this would have been a payment in money on his subscription, which, in accordance with the principles settled by, and acted on in this court, would have operated to ratify and confirm

his subscription. No difference in substance can be perceived between such a transaction and the one which actually took place between the parties in this case.

It cannot be questioned, I think, that the effect of this settlement was an affirmance on the part of the defendant of his liability upon his subscription, and on the part of the company a recognition of his standing in that precise position which entitled him to be thus regarded. He could claim all his rights as a stockholder and the company would have been bound to concede them. - An attempt on their part to evade any claim which he might lawfully make as a stockholder could have been successfully resisted by the defendant. It would not have been listened to for a moment in any legal tribunal, and I think the right and the duty are reciprocal, and both equally attach to and are binding on the defendant.

I am of opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event.

MULLIN, J., concurred.

W. F. ALLEN, J., dissented.

Judgment reversed.

[ONONDAGA GENERAL TERM, October 5, 1858. *Bacon, W. F. Allen* and *Mullin,* Justices.]