Diamond v. The Williamsburgh Insurance Company.

---

PHILIP DIAMOND *v.* THE WILLIAMSBURGH INSURANCE COMPANY.

The court may, under the Code, at any time before trial, allow a defendant to amend his answer by setting up a new defense. ·

The case of *Woodruff* v. *Dickie* (5 Robt. 619; 31 How. Pr. 164), holding the contrary, *Held* to have been erroneously decided.

The nature of the power which the court had at common law, to allow amendments investigated, the enlargement of it by statutes and judicial decisions, examined, and the cases reviewed.

It is not indispensable that there should be something to amend by, for an amendment is not solely the correction of an error in a pleading already before the court, but may consist in the withdrawal of it, and the substitution of a new and different defense.

SPECIAL TERM, *November*, 1873.

THE defendant moved, at the Special Term, to amend his answer by setting up a new and additional defense. The plaintiff insisted that the court had no power to allow it, and relied upon the decision of the general term of the Superior Court, in the case of *Woodruff* v. *Dickie* (31 How. Pr. 164; 5 Robt. 619).

Diamond v. The Williamsburgh Insurance Company.

*K. Miller*, for the motion.

*A. S. Sanger*, opposed.

DALY, CH. J.—I entertain no doubt of the power of the court to allow a defendant to amend his answer before trial, by setting up an additional defense, if it be in furtherance of justice. Under the old practice, a plaintiff would not be allowed to amend his declaration if the amendment would change the nature of the action (*Cope* v. *Marshall*, Sayre, 234; *Duchess of Marlborough* v. *Wiginan*, Fitzg. 193). But the rule was not so strict in respect to amending pleas, or adding a new and different plea as a defense to the action, the reason given being that the plaintiff, if he has misconceived the form or nature of his action, can discontinue and bring a new action; whereas the defendant must avail himself of his defense in the action brought against him (*Waters* v. *Bovill*, 1 Wils. 223; *Cope* v. *Marshall*; Sayre, 234). The defendant would, therefore, be allowed to amend his pleading at a stage of the case when the plaintiff would not be allowed to amend his declaration (*Waters* v. *Bovill*, *supra*; *Skeet* v. *Woodward*, 1 H. Bl. 238), and to amend by setting up a new defense (*Dryden* v. *Langley*, Barnes, 22; *Prior* v. *Duke of Buckingham*, 8 Moore, 584; *Hubert* v. *Steiner*, 4 Moore & S. 228). The code has not changed the law in this respect. Its provisions, in relation to the amendment of pleadings, were designed to be more broad and liberal even than the former practice. The codifiers say, in respect to this very section authorizing the amendment of pleadings and proceedings (then § 149), that their object was (I use their own language) "to provide a means of amendment of the most liberal character; *as liberal, indeed, as we could devise*" (First Report of Commissioners, 1848, p. 158).

It was held by the Superior Court, in *Woodruff* v. *Dickie* (31 How. Pr. 164; 5 Robt. 619, Chief Justice Barbour dissenting), that under the code the court has no power to allow, by amendment, the insertion of a new or different cause of action or defense. Judge Monell, who delivered the prevailing opinion, that neither at common law, nor under any of the

previous statutes, was such a power ever claimed; and the cision of the special term was affirmed upon the ground that the court had no power to allow a defendant to amend his answer by setting up a new defense.

With all due respect for the very able court by whom this decision was rendered, I think the conclusion arrived at was erroneous. The four authorities cited in support of it are, with one exception, cases in which the plaintiff applied to amend his declaration by setting up a new cause of action, and are in accordance with the old practice, as I have previously stated it; that an amendment of a declaration would not be allowed where it would change the nature of the action. In *Sacket* v. *Thompson* (2 John. R. 207), the plaintiff asked to substitute for the existing count in the declaration a new count; or if that was not thought proper, to add two other counts. It is not shown in the report what the effect of the proposed counts would have been; but it may be inferred from the remarks of the court, that they amounted to setting up a new cause of action. The application was refused, not only upon this ground, but because it was too late for the plaintiff to apply for an amendment of his declaration; the old practice being that an amendment, amounting to a new count, was not permitted after two terms of the court had elapsed. In the next case cited, *Heneshoff* v. *Miller* (Id. 294), the amendment was allowed, as it did not change the nature of the action. In the next case, *Williams* v. *Cooper* (1 Hill, 637), which was an action for slander, the defamatory charge was that the defendant had stolen *apples*, and the amendment asked was to add words which imported that he had stolen *boards*. This was regarded as adding a distinct, substantive cause of action, not known to the plaintiff when the suit was brought, and, of course, not intended to be declared upon. But, in addition to this, the defamatory charge sought to be added was, when the application was made, barred by the statute of limitations, and to have allowed it then to be incorporated in the declaration by an amendment, would have been to avoid the effect of the stat- In that very case, moreover, it appeared that the defendant been allowed, after pleading the general issue, to a

adding a plea of justification, the plaintiff at the same time applying to amend his declaration; so that the case shows that the defendant was allowed to set up a new and different defense, whilst the plaintiff was not permitted to set up a new cause of action, thus recognizing the distinction to which I have previously referred. In the last case cited, *Trinder* v. *Durant* (5 Wend. 72), the defendant applied to amend a plea in abatement, not by setting up a new defense, but to perfect his plea by adding some additional names of persons jointly liable that had been omitted, and by striking out the names of others that had been erroneously inserted; which application was refused, because a plea in abatement being a dilatory plea was not at common law amendable, and the court thought that the provision in the Revised Statutes did not apply, as the amendment of such pleas, in the language of the statutes, was not " in furtherance of justice." There is, therefore, nothing in the authorities warranting the conclusion that an answer cannot be amended by setting up a new and different defense; whilst in the following cases, decided both before and since the code, the defendant, after issue joined, was allowed to amend, not only by varying an existing defense, but by setting up a new defense (*Dryden* v. *Langley*, Barnes, 22; *Prior* v. *The Duke of Buckingham*, 8 Moore, 584; *Hubert* v. *Steiner*, 4 Moore & Scott, 328; *Beardsley* v. *Storer*, 7 How. Pr. 294; *Harrington* v. *Slade*, 22 Barb. 161; *McQueen* v. *Babcock*, 13 Abb. Pr. 268; *Van Ness* v. *Bush*, 22 How. Pr. 491; *Union National Bank of Troy* v. *Bassett*, 3 Abb. Pr. N. S. 359; *Ford* v. *Ford*, 53 Barb. 526).

Judge Monell in his opinion in this case of *Woodruff* v. *Dickie* says that an amendment is the correction of an error or mistake in a pleading already before the court; that there must be something to amend by, and that the insertion of facts constituting a new cause of action or defence, is a *substituted* pleading and not an amendment. This is a very narrow definition of an amendment, and is not warranted either by the etymology of the word, nor by the practice respecting amendments, as it has existed from the earliest period.

Originally at the common law all pleadings were oral at

the bar of the court, and were amendable for defects of *form* or substance at any time before they were recorded by the judges as the foundation for their judgments (*Garner* v. *Anderson*, 1 Str. 11; Gilbert's Common Pleas, CX.), which was any time during the term, and by a statute subsequently passed (14 Edw. III), it might be allowed during the next term. To use the language of the court in *Rush* v. *Seymour* (10 Mod. 88), "If any error were spied in them, it was presently amended;" that is before the roll of that term was made up, or engrossed as the final record of its proceedings (Blackmore's Case, 8 Co. 157); for, says Coke in the case cited, " during the term the record is in the breast of the court, and not in the roll;" or as the practice is more distinctly set forth in an anonymous case in 3 Salk. 31, in which it was ruled that "whilst the declaration is *in paper*, the court may give leave to amend anything in it at pleasure," and " during the term might amend any mistake in the roll at common law; the roll being only the remembrance of the court during the term." But that " after the term, the court could not amend any fault in the roll, for then the record is not in the breast of the court, but in the roll itself." When the record for the term was made up, it could not, by the common law, under heavy penalties, be altered, erased, or amended, even by the judges, unless they were specially authorized to do so, that power resting exclusively in the king and his council (Britton, B. I, c. 1, § 11). When the custom of oral pleading ceased, and all pleadings were required to be in writing, a motion to amend the pleading succeeded to the former practice. This motion, it is said in *Rush* v. *Seymour*, *supra*, "the court cannot refuse whilst the pleadings are in paper;" that is, before they were entered of record; but the same authority states that the court has a discretion, and may refuse, if the party applying for the amendment refuse to pay costs, or the amendment amount to a new plea, the word plea being here used in its generic sense, as applicable to the pleading of either party. The course of procedure after this change was made, and the nature of it, is thus explained by Chief Justice Parker, in *Garner* v. *Anderson*, Str. 11: " The foundation of amendments by the court whilst the

proceedings remain in paper, before they be recorded is, that these papers delivered to and fro, supply the declaring and pleading *ore tenus* at the bar, and may be amended *as easily as spoke at the bar.*"

The pleadings were "in paper" until the record or rolls for the trial were made up, engrossed, sealed at the Nisi Prius office and docketed (1 Clerk's Inst. 153; 2 Tidd's Pr. 728, 9th ed.)

Up to this time, the engrossment and sealing of the plea and issue rolls, the greatest liberality appears to have prevailed in allowing amendments, especially on the part of the defendant, except where he had interposed a dilatory plea, such as a plea in abatement (*Lepara* v. *German*, 1 Salk. 50), or where by pleading defectively and compelling the plaintiff to demur, the plaintiff had lost a trial (*Jordan* v. *Twells*, Cases Temp. Hard. 171). The power was not limited, as Judge Monell supposes, simply to a correction of an error or mistake in a pleading already before the court. Baron Gilbert, the very highest authority on such a subject, says that it was debated amongst the judges at Sergeant's Inn whether a plaintiff could amend his declaration after the defendant demurred and the plaintiff had joined in demurrer, and he says that their conclusion was that he could, if the cause were still in paper, on payment of costs, liberty being given to the defendant to change his plea; and he gives the reason as follows : "Because the pleading in paper came in only instead of the antient way of pleading *ore tenus;* and in the pleading *ore tenus* the record was only in *fieri;* and therefore though a man had joined in demurrer, he might come before that was entered on record and pray to *withdraw his demurrer* and amend; but after the pleadings were entered on record of the same term, then it could not be altered or amended" (Gilbert's Common Pleas, pp. 114, 115). That this was the practice appears still more conclusively from a case in 2 Salk. R. 520, in which it is said : "Since pleading in paper is now introduced instead of the old way of pleading *ore tenus* at the bar, it is but reasonable after a plea to issue or demurrer joined, that, upon payment of costs, the parties should have liberty to amend their plea, or *to waive*

*their plea*, or demurrer, while all proceedings are in paper." If a party therefore may waive his plea, it is something more than correcting an error or mistake in a plea already before the court. It is what Judge Monell thinks cannot be done, for he says a pleading containing a new defense "is a substituted pleading and not an amendment," but if, as these early authorities show, either a plaintiff or defendant will be allowed to amend after his pleading is demurred to, by substituting either another declaration or another plea, it is very clear that Judge Monell's impression of the practice was erroneous.

In *Prussett* v. *Martin* (Gilb. C. P. 113), the plaintiff was allowed to amend by filing a new bill, although there was nothing to amend by; and in the cases already cited ( *Waters* v. *Bovill*, 1 Wils. 223 ; *Dryden* v. *Langley*, Barnes, 22 ; *Prior* v. *The Duke of. Buckingham*, 8 Moore, 584 ; and *Herbert* v. *Steiner*, 4 Moo. & Scott, 328), the defendants were allowed to add additional pleadings, setting up separate and distinct defenses.

The word "to amend" has not and never had, either etymologically or legally, such a restricted sense as the learned judge puts upon it. It came into our language from the French "amender," the root or parent word being *menda*, a fault, and means in its most comprehensive sense "to better." It is so defined by all the leading lexicographers. Thus in Phillip's New World of Words, and in Kersey and in Bailey, one of the definitions, is "to make better;" by Johnson "to change from bad for the better;" by Webster "to change in any way for the better * * by substituting something else in the place of what is removed." As a law term, the simple definition of amendment given by Rastall, Cowell or Blount, our earliest expositors of law terms, is the espying out of some error in the proceedings and the correcting of it before judgment and after, if the error be not in the giving of the judgment, the remedy in that case being by writ of error. When, therefore, a defendant is allowed to withdraw a plea or answer, because it does not set up the defense which he has, and put in its stead a plea or answer which does, it is a change for the better, and is therefore an amendment as defined by the lexicographers;

nor is the statement correct that an amendment can be allowed only where there is something to amend by, for amendments have been allowed where that objection existed and the point was expressly taken (*Carr* v. *Shaw*, 7 Term R. 299; *Rutherford* v. *Mein*, 2 Smith, K. B. 392; Gilbert's Com. Pleas, p. 116, 3d ed.). Under the various statutes of jeofails, enacted to relieve the prevailing party, notwithstanding certain omissions or defects in the record, the general rule was that there must be something in the record to amend by or to enable the statute to take effect, and yet, notwithstanding this general rule, Tidd says and quotes the cases in support of his statement, that the courts have in particular instances, permitted the plaintiff to amend his declaration after issue joined, in cases where there was nothing to amend by (Tidd's Practice, p. 713, 9th Lond. ed.). In respect to the plaintiff's right of amendment, the courts did impose some restriction, even while the pleadings were in paper, for the reason already stated, that the plaintiff can sue again. Thus he would not be allowed to amend his declaration after two terms had elapsed, because if he had not declared within that time, the cause would have been out of court, and having declared defectively they gave the defendant the benefit of the time that had elapsed, treating the amendment as equivalent to a new declaration. For this reason the plaintiff in such a case was left to sue over again. But this reason did not apply to pleas, which Tidd says "may be amended at any time as long as they are in paper" (1 Tidd, p. 708). Nor would they allow an amendment changing the nature of the action; but would, for the same general reason, leave the plaintiff to bring another action. But even these rules were not strictly adhered to; for if the statute of limitations would be a bar to a new action, they would allow the amendment upon terms; and the restriction that the plaintiff would not be allowed to amend after two terms had elapsed was in course of time greatly relaxed in practice (*Bearcroft* v. *The Hundred*, &c. 3 Lev. 347; *Duchess of Marlborough* v. *Wignian*, Fitzg. 198; *Cope* v. *Marshall*, Sayre, 234; *Freen* v. *Cooper*, 6 Taunt. 358; *Horston* v. *Shilston*, 6 Moore, 490; *Garway* v. *Stevens*, Barnes, 19; Tidd's Practice, pp. 697, 698).

Diamond v. The Williamsburgh Insurance Company.

But I no where find, except where he pleaded matter in abatement, or defectively for the purpose of delay, that any restriction was ever placed upon the defendant's right to apply for an amendment of his pleading whilst the pleadings were in paper, whether it related to his setting up an additional defense or not, and it would be very unjust if it were so ; for as I have said, he must avail himself of his defense if he have any, in the action brought against him, and the reason given in the plaintiff's case that he may sue again is in no way applicable to the defendant's case.   When the pleadings were made up in the form of a record, the practice was more strict ; but even then amendments would be allowed in the discretion of the court, if there were anything to amend by (Barnes, 3, 7, 10 ; 2 Clerks' Instruction, 206, 207) ; for then an amendment involved an erasure or alteration of what was on record, for the plea and the issue rolls were carefully engrossed, sealed and docketed with the clerk, as was also the *Nisi Prius* record ; the latter being in the nature of a commission to the judges for the trial of the issue which was also sealed and entered, forming with the rolls, when all this was done, a portion of the record in the cause.   This was the practice formerly in this State (Wyches' Practice, 146 ; Caines' Practice, 502) ; but it has long since been abrogated.   Under the code the clerk, after entering judgment, simply attaches all the necessary papers together and files them as the judgment roll in the cause ; so that until the clerk enters the judgment the pleadings are with us, to use the English term, still " in paper." Up to this time, or rather up to the time of the trial, no inconvenience to the court can arise from allowing them to be amended upon terms, and any reasons which may have heretofore existed under the early practice in this State and in England for restricting the power of amendment, upon the ground that the rolls had become a part of the record, are no longer of any force, as there is now no such course of procedure.

The courts were at first very strict in permitting amendments of anything that had taken the form of a record, for records in England were made up with great formality, and much importance was attached to their being preserved without

Diamond v. The Williamsburgh Insurance Company.

change or erasure. At first, they were not allowed to be altered at all, then only for mistakes made by the clerks; but afterwards, as was said, " in furtherance of justice and to obtain right between the parties," the amendment of them was greatly extended (*The King* v. *Ellames*, Cases Temp. Hardw. 48). Lord Hardwicke says, in *Jordan* v. *Twells* (Cases Temp. Hardw. 171), " Formerly in all amendments the party was to show that the proceedings were all in paper, though *of late* that has been got over." And finally, the power was so much extended, that in *The King* v. *The Mayor, &c. of Grampond* (7 Term. R. 703), Lord Kenyon says, that where the defect does not come under any of the statutes of jeofails, but the allowance is made under the general authority of the court, *each particular case must be left to the discretion of the court.* He reiterates the wish expressed by Lord Hardwicke, that " these amendments were reduceable to some certain rules," which he considers equivalent to declaring that there are none, and he then says that the best principle seems to be that on which Lord Hardwicke relied, " that an amendment shall or shall not be permitted to be made as it will best tend to the furtherance of justice." This is brushing away all previous distinctions, and prescribing as the only criterion that which is adopted in the Revised Statutes, that " the court in which any action is pending shall have power to amend any process, pleading, or proceeding, either in *form* or *substance*, for the furtherance of justice, upon such terms as shall be just" (2 Rev. Stat. 424, § 1). This was certainly broad and comprehensive enough to include all cases. It was limited, however, to amendments before judgment, and the codifiers evidently meant to make it more comprehensive, so as to embrace, also, all cases after judgment. They thought they had done so, and as they expressed it, that the provision they had made would be an answer to that class of objectors who asserted that the pleadings they had proposed would prevent a party from proving the real state of his case when it was *imperfectly known to him at the commencement of the action, or imperfectly explained to his counsel* (Report of 1848, p. 158). Their confidence has not been justified by the results of their work. If they had used the words of the Re-

vised Statutes, simply extending the provision therein to cases
after judgment, there would have been no difficulty.   But they
unnecessarily particularized what amendments should be al-
lowed, and by doing so raised a doubt as to the extent or limit
of the power.   The general provision, however, in § 173, that
the court, in furtherance of justice and upon such terms as may
be proper, may " *correct a mistake in any other respect*," in any
process, pleading, or proceeding either *before* or *after* judg-
ment, is, in my opinion, broad enough to give the court all the
power which existed under the Revised Statutes, and to extend
it to cases after as well as before judgment.   There is no re-
striction in the Revised Statutes as to the nature of the amend-
ment, if the court think it is in furtherance of justice; nor any
beyond this, in the code, except that the pleading or proceed-
ing cannot be conformed to the facts proved, if it will substan-
tially change the claim or defense.   Under either the Revised
Statutes or the code, there is no doubt in my mind of the
power of the court to allow an amendment setting up a new or
different defense at any time before trial, if it be in furtherance
of justice.

There is nothing connected with our system of legal pro-
cedure that was more wise in its institution, or which has
proved more beneficent in its effects, than the extensive power
conferred upon the courts to allow amendments; or, after cer-
tain stages in the proceeding, to disregard mere technical de-
fects.   A due regard to form is essential to the methodical
administration of any system of jurisprudence, which is in no
way impaired by a liberal policy in permitting amendments,
or, where it can be done, by overlooking technical errors or
omissions which do not affect the merits.   By a too rigid ad-
herence to forms, in refusing to allow those errors and mistakes
to be corrected which are incident to the conduct of all human
affairs, legal tribunals evince an unenlightened spirit, and breed
a race of technical lawyers who do not aid, but obstruct the ad-
ministration of justice, by the exercise of their acuteness in de-
tecting defects whereby they may defeat a just cause of action,
or prevent an honest defense.   The numerous statutes of jeo-
fails, enacted from the reign of Edw. III to that of Geo. I, over-

Diamond v. The Williamsburgh Insurance Company.

a period of four centuries, are but so many monuments of the wisdom of the Legislature in interposing to prevent lawyers from defeating the ends of justice by relying upon some technical defect or omission in the proceeding; and a large portion of the litigation covering this period, as will occur to any one familiar with the early reports, has turned more upon questions arising out of the form of the pleadings, or some other technical point, than the substantial justice of the case. The growth of this kind of litigation was due, in no inconsiderable degree, to the technical disposition of the courts, and we owe it to some eminent judges, conspicuous among whom was Lord Hardwicke, that a wiser and better policy has since prevailed. We have sought in this State, by our legislation, to carry out and extend this policy, and our courts will but conform to the design of the Legislature by interpreting its provisions as meant, not to restrict, but to facilitate in a still greater degree, the allowance of amendments.

I might have disposed of the objection raised upon this motion by simply referring to two cases in the Supreme Court (*Union National Bank of Troy* v. *Bassett*, 3 Abb. Pr. N. S. 359; *Ford* v. *Ford*, 53 Barb. 526),* which have been decided since *Woodruff* v. *Dickie*, in both of which the court refused to follow the decision of the Superior Court in that case. But I have gone into this extended examination because this question of the amendment of pleadings is one of great importance, in which it is very material that the courts should not go backward under an erroneous impression of the former state of the law, and upon that error give to the provision in the code a narrow and very limited construction.

In the present case, the defendant's attorney swears that he had supposed that under his general denial he would be able to set up as a defense that the plaintiff had forfeited the policy by the breach of the covenant respecting additional insurance; but that he is now advised by counsel that that is very doubtful, and that, to put it beyond question, it is safer to set up that defense specifically in the answer. It is upon this ground that an amendment of the answer is asked for. The application is a reason-

---

* And see *McQueen* v. *Babcock*, 3 Keyes, 428.

able one, and ought to be granted. It will involve the service of a new answer, and as the plaintiff has already been put to great delay in the time consumed in the examination of witnesses out of the State upon commissions, it will have to be upon the payment of such costs as may have accrued since the former answer was put in.

Motion granted.