'THOMAS T. TASKER, JR., AND ANOTHER, *against* WILLIAM L. WALLACE.

(Appeal decided April 3d, 1876, and motion for reargument decided June 26th, 1876.)

Where a suit was brought against a corporation by the name of "The West Side Railroad Company," and under that name a judgment recovered against it and execution issued and returned unsatisfied: *Held*, that thereafter the court had power to allow the summons, complaint, judgment roll and execution to be amended by inserting therein, in the name and title of the defendant, the words " and Yonkers" after the words "The West Side," so as to make the title of the defendant "The West Side and Yonkers Railroad Company."

*Held*, further, that where the sheriff's return on the execution, and indorsed on it, was, "No personal or real property. M. T. Brennan, Sheriff," that no amendment of the return was necessary in order to show an execution returned unsatisfied against "The West Side and Yonkers Elevated Railroad Company."

Under the general railroad corporation act (L. 1850, ch. 140), and the amendments to the same, payment of subscription to stock in patent rights of unascertained value, is not a payment "in money" within the meaning of the statute.

APPEAL by plaintiffs from a judgment of this court dismissing the complaint, entered by direction of Judge VAN BRUNT at trial term.

The action was brought by the plaintiffs as creditors of the West Side and Yonkers Elevated Railroad Company, who held a judgment against the company, and an execution thereon returned wholly unsatisfied, to charge the defendant, as a stockholder in the company, with the payment of the debt, on the ground that the stock held by him had never been paid for.

The former action had been commenced against, and the judgment entered against, "The New York Elevated Railroad Company," but after the return of execution unsatisfied, on an affidavit of the plaintiffs' attorney, showing that a mistake had been made in the corporate name of the company, an order was entered *ex parte*, amending the summons, complaint and judg-

Tasker v. Wallace.

ment roll *nunc pro tunc*, by inserting the words " and Yonkers" in the name of the defendant, so as to make it " The West Side and Yonkers Elevated Railroad Company."

It appeared on the trial that the stock held by the defendant had been originally issued to one Charles T. Harvey, in part payment of certain patent rights that had been sold by him to the company, which patent rights, at the time of the sale of them to the company, were considered of great value, but afterwards turned out to be of no value. These shares of stock had afterwards been borrowed from Harvey by the company, and sold by it to the defendant at much less than the value upon their face.

*Edward Patterson*, for appellants.

*Charles Tracy*, for respondent.

CHARLES P. DALY, Chief Justice.—The amendment was to correct a mistake in the name of the party, which the court have authority to make when it is in the furtherance of justice. It is a matter purely in the discretion of the court, and could be made after judgment and the return of the execution.

The summons was served upon the president of the company, who is also the defendant in the present action, so that it was not by amendment creating another and different action, but curing a defect in the name of the defendants, in an action which had been brought in good faith against them.

In the *People* v. *Ames* (35 N. Y. 484), the court allowed the sheriff's return to be amended after an action had been brought for a false return, and it was held by the Court of Appeals not only that the court had power to do this, but that the amendment gave to the return the same effect as if it had been in the amended form at the time the return was made; and a writ of replevin in the *cepit* was allowed, after the execution of the writ, to be amended, so as to change it into an action in the *detinet* (*Anon.* 4 Hill, 603). It was allowed, upon showing to the court that the plaintiff had intended to bring the action in

the *detinet*, but by an oversight or mistake of the attorney, the words imputing an unlawful taking were inserted (and see *Leetch* v. *The Atlantic Mutual Insurance Co.* 4 Daly, 518 ; and *Diamond* v. *The Williamsburgh Insurance Co.* Id. 494, and the cases there cited, in respect to the extensive power of the court to remedy defects by amendment). In *Thomas* v. *Leonard* (11 Wend. 53), an amendment was allowed in respect to a clerical error which would have been fatal, after a motion had been made in arrest of judgment, and as to other cases in which any material amendments may be allowed after judgment and execution, see Graham's Practice, 663, 664, 665, 2d ed.

In *Porter* v. *Goodman* (1 Cow. 414), an amendment was allowed by adding the name of a plaintiff, omitted by mistake, although an execution had been issued, levied, and an action of trespass brought by defendant, on the ground that the levy under the execution was irregular and void.

In *Mitchell* v. *Van Buren* (27 N. Y. 300), which was a judgment by confession upon a statement in writing, signed and verified by the defendant under the Code, the plaintiff was allowed to amend by inserting a new verified statement setting forth the facts more specifically in support of the judgment, after a motion had been made by a judgment creditor of the defendant to set aside the judgment for the insufficiency of the statement, the judgment being a lien on the debtor's real estate. Judge EMMOT dissented, upon the ground taken in the present case, that the court could not, by amendment, affect the rights of third parties, in respect to whose judgments the judgment confessed was, by statute, inoperative and void, the statement upon which it was entered not being in compliance with the Code. But the Court of Appeals affirmed the action of the court below, upon the ground that the courts have jurisdiction over their records, and may at all times relieve against errors and mistakes by amendments, or by allowing papers to be filed or entries made *nunc pro tunc*, in furtherance of justice, which was the case there, it having been shown that the proceeding was in good faith, and that the intention of the parties was to create a valid judgment for a debt honestly due, a decision which it appears to me covers the point raised in this case.

The plaintiff here meant to bring the action against this particular corporation, and served the summons upon its president. It was in furtherance of justice, therefore, to allow all the proceedings to be amended, so as to add the words omitted by mistake in the corporate name *nunc pro tunc*, the effect of which was the same as if the omitted name had been used from the beginning. The doing of the act now (*nunc*), when it is actually done, being allowed to pass as a substitute and equivalent for (*pro*) doing it then (*tunc*) or before (Burrill's Pr. 762; Tidd's Pr. 932, 933, 9th London ed.; *Flower* v. *Bolingbroke*, 1 Str. 639).

The transfer to the company of patents, the value of which as it turned out was nothing, but " at the time," to use the language of the witness, " was considered invaluable," was not, in my opinion, a payment " in money " within the meaning and intent of the statutes (*The People* v. *Troy Hose Co.* 44 Barb. 634, 635; *Haviland* v. *Chace*, 39 Id. 283). The transfer of a patent which had no ascertained value; which, in the language of the witness, " as it turned out was worth nothing," cannot be regarded as " money," or its equivalent, because those engaged in the management of the company believe at the time it is valuable, and receive it after organization, upon some fixed estimate of its value, between them and the subscriber, as so much money. Before a thing can be regarded as money or its equivalent, it must have an actual, positive, and ascertained value —a value so thoroughly ascertained and fixed at the time, that it can at once be changed into money, of which it is regarded as the equivalent. The value of a patent right depends upon the invention. The pecuniary value of it is a mere matter of anticipation, until the utility of the invention is established by practical use, and is a source of ascertainable and known pecuniary profit. No such test existed here, but the value of these patents turned out to be nothing, as has been the case with many patented inventions.

Three of the cases cited, *Beach* v. *Smith* (28 Barb. 264); *Syracuse, &c. R. R. Co.* v. *Gere* (4 How. 392); and *The Black River and Utica R. R. Co.* v. *Clarke* (25 N. Y. 208), afford no countenance to such a construction. On the first,

a debt due to the subscriber for services rendered to the company, and which it would have had to pay as money, was allowed upon the subscription as so much money, the subscriber crediting the company with the payment of the debt. In the second, the receiving of a check for the ten per cent. required to be paid in cash, was held, in an action upon the check, not to be such a violation of the act as to render the check void in the hands of the company. And in the third, a subsequent payment of the full amount satisfied the statute, although a short interval occurred between the actual subscription and the payment of the money. The subscription was regarded as conditional, and as having taken effect upon the payment of the money.

The case of *The East N. Y. &c. R. R. Co.* v. *Lighthall* (6 Robt. 407) is the one chiefly relied upon by the respondent, and if the case goes to the length of upholding such a payment as is relied upon in this case, I cannot give my assent to it. It was, however, in some respects distinguished from the present case. It was an action by a railroad company to recover the amount of the defendant's subscription, after the president, who had authority to receive subscriptions, agreed to take for the subscription one hundred shares of the stock of a coal company, at the price which the defendant had paid for that stock, and which shares the defendant transferred to the president, upon the president's giving a written agreement to deliver to the defendant thirty shares of the capital stock of the railroad company, when the road was completed. In this case, the stock received had an ascertained value, as the defendant transferred it to the company at the price he paid for it; which distinguishes it from the present case, though I am far from admitting that the receipt of the stock of a corporation, at the price the subscriber paid for it, would necessarily be a payment in money or its equivalent, within the meaning of the statute. But, apart from that question, the Superior Court were of opinion that the question of the right of the corporation to receive this stock was not involved. They had received it through their authorized agent, in payment of the defendant's subscription, and although they had not reaped the fruits of

the transaction, it was held that they ought to be concluded by the act of their agent, and not allowed to inflict a wrong upon the defendant, an innocent person, who, believing in the competency of the agent to act for his principal, had dealt with him accordingly. Whether the court was right, or not, in so holding, it was the ground upon which they placed their decision, and distinguishes the case, as I have said, from the one now before us. It is suggested by the appellant that the judge granted the nonsuit upon the authority of this case, which he may well have done, upon the mere presentation of it at the trial, without sufficient opportunity by a careful examination to ascertain exactly what was decided by it.

The defendant was the owner of the stock issued to Harvey, the patentee, in part payment of sixteen patents. The transfer of these patents must have been received as a payment in money of the ten per cent. required to be paid by the 4th section of the act (L. 1830, p. 213), by the subscriber at the time of subscribing, upon the amount subscribed by him, and the defendant as a holder of this stock, was liable, under § 10 of amended act of 1854 (3 Edm. R. S. p. 646), to the amount of ten per cent., that amount being unpaid upon the stock held by him (*Bailey* v. *Hollister*, 26 N. Y. 112 ; *Mann* v. *Currie*, 2 Barb. 294 ; *Mead* v. *Keeler*, 24 Id. 20 ; *Johnson* v. *Underhill*, 52 N. Y. 203 ; *Eaton* v. *Aspinwall*, 19 Id. 119). The nonsuit was therefore, improperly granted, and the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Joseph F. Daly, J., concurred.

Van Hoesen, J. [dissenting].—I cannot agree to that portion of the opinion of the Chief Justice which holds that the amendment of the summons, complaint, judgment roll and execution, without an amendment of the return, in the suit in the Supreme Court, in which Tasker was the plaintiff, and the Elevated Railway Company the defendant, gave to Tasker the right of action against Wallace.

With great deference I say that the cases cited do not seem

to me to cover the question in the case. There is no doubt of the power of the court to order amendments. There is no doubt that the amendment referred to merely cured a defect in the name of the Elevated Railroad Company ; and perhaps it is venturing but little to say that Wallace is quite as well off pecuniarily as he would have been if the proceedings against the railroad company had from the outset designated the corporation by its right name.

We have no right, however, to take judicial notice of the financial embarrassments of the West Side & Yonkers Elevated Railway Company, and to assume without proof, that an execution, if one had been issued against that company under its real name, would have been returned unsatisfied, by the sheriff. Tasker's right of action against Wallace is purely statutory. The statute provides that an action shall not lie against a stockholder until an execution against the corporation shall have been returned unsatisfied. Of course, the execution should run against the corporation by its right name. If, for instance, the statute should provide that the stockholders of the Wheeler and Wilson Company should be liable for the debts of that corporate body, in case an execution against the company should be returned unsatisfied, would it be seriously contended that a corporator's liability would be fixed by showing the return of a writ against the Wheeler Company or the Wilson Company ?

Again, in this case, though the execution was amended, the return was not. It doubtless was in the power of the court to allow the sheriff to amend the return ; and it is probable that if the sheriff had obtained, and had exercised, the privilege of amending the return, Wallace might, in this very action, have been bound.

But the fact is that the return stands as it stood when it was made, and it certifies, in effect, that the West Side Elevated Railroad Company had no property. That was not, in my opinion, such an exhaustion of the remedy against the West Side & Yonkers E. R. R. Co., as to give Tasker a right of action against Wallace.

It seems strange to me that an order for the amendment

of an execution, which did not mention the return, should *ex proprio vigore* amend a return made long prior to the order; that the court should assume the duties of its sheriff, and itself make or amend the return of process; that it should so amend the return as to make it appear that the sheriff falsely certified that the West Side and Yonkers Elevated Railroad Company had no property, when all that he certified was, that he could find no property of the West Side Elevated Railway Company. A return may be amended, in accordance with the facts, but not in defiance of them. I think the nonsuit was right.

After the delivery of the foregoing dissenting opinion, the following additional opinion was delivered by

CHARLES P. DALY, Ch. J.—No amendment of the return was necessary. The return was indorsed upon the execution merely in these words: "No personal property. M. T. Brennan, sheriff." The defect in the defendant's corporate name in the execution having been amended, it applied to the whole execution, and to everything official indorsed upon it, and as the cases cited show, the execution after the amendment is to be regarded as if it had originally been issued in the amended form. If the sheriff had returned "no personal or real property of the West Side Elevated Railroad Company," there might have been some question, but the defect in the corporate name having been cured by the amendment, the return is to be used as indorsed upon an execution issued against the West Side *and Yonkers* Elevated Railroad Co. The material matter in all the cases is that the suit or proceeding was instituted in good faith against the party to whom the judgment applies by the amendment, which is allowed to supply something omitted by inadvertence or mistake. Where the defect arises under such circumstances, the whole policy of the law has been to supply it by amendment, in furtherance of justice, and to give it, by amendment, all the validity and force that would follow, if the defect had never existed. This has been the uniform policy of the law ever since the enactment of the first statute of jeofails, in the reign of Edward III. At the common law no difficulty

arose in respect to amendments, for all pleas were *ore tenus* at the bar, and if any error was discovered it was amended on the spot (*Rush* v. *Seymour*, 10 Mod. 88). The difficulty was first created by statute, the ordinance of Edward I, which required all pleas and judgments to be recorded, and the judges were forbidden to erase their rolls, or amend them, or record contrary to the enrollment (Britton, ch. I, & §§ 9–11), which was so rigidly enforced that one of the justices, Hengham, was heavily fined for altering a record, although it was in furtherance of justice (4 Inst. 255). It was to relieve against the injustice that arose from this strict course of procedure, that the first and subsequent statutes of jeofails and amendments were passed. The Norman French words from which the name of the statute was derived, express exactly what was intended, *jeo-faile* or *j'ai faillé*—I have omitted—and these statutes were passed to relieve against the omission, by empowering the court either to overlook it, or remedy it by amendment ; and were so numerous and so comprehensive in their provisions, as to empower the court to supply every omission that was essential in support of the process, proceedings, or judgments (*Diamond* v. *The Williamsburgh Ins. Co.* 4 Daly, 494; 3 Bl. Com. 406–412 ; *Rex* v. *Llandoff*, 2 Str. 1011, Amendment; 3 Salk. 29 ; *The King* v. *The Mayor, &c. of Grampond*, 7 T. R. 703). And by our own statutes, and especially by the Revised Statutes and the Code, this authority of the court in the exercise of its discretion, to remedy all such defects, either before or after judgment and execution, in furtherance of justice, was meant to be as extensive as it was in the power of words to make it. Nothing was better settled in the exercise of this authority under the statutes of jeofails and of amendments, than the power of the court to allow an amendment where there had been a mistake in the name of a party.

It is said in 1 Rolle's Abr. 199, l. 35, that if the mistake in the name of a defendant is where he is first named, it is matter of substance, and not amendable. In subsequent cases, however, where the mistake in the defendant's name occurred in the original writ, it was allowed to be amended, where the attorney had given the correct name to the curator, but the mistake was in the issuing of the writ ; though at first, in one

Tasker v. Wallace.

of these cases it was doubted, being matter of substance ( *Westby's Case*, 2 Vent. 152; *Turner* v. *Palmer*, Cro. Car. 74; *Pelham* v. *Hemming*, Id. 594; *Wheston* v. *Packham*, 3 Wils. 49). But even this distinction was swept away by the Revised Statutes, which declared that no judgment should be impaired, or in any way affected, "for any mistake in the name of any party or person" (2 Rev. Stat. 424, §§ 4, 7); and by the Code it is expressly provided that the court may, after judgment, correct a mistake in the name of any party, which was all that was done in this case.

The meaning and intent of the provisions of the statute, that an execution shall have been returned unsatisfied, in whole or in part, against the corporation (3 Edm. Rev. Stat. 446, § 10) has been fully carried out. An execution was issued, and returned against this corporation, though in the execution, and in the previous proceeding, a part of its name was omitted by mistake, and that technical omission was cured by the power of the court to supply all such defects by amendment. It was shown to the court that ordered the amendment, that the claim in the suit was against this corporation, that the summons was served upon its president, that the misnomer of the defendants arose from the inadvertence of plaintiff, and the judgment was for a debt due by the corporation. If the amendment is then to have any effect at all, it must be an effect *ab initio*, making the whole proceeding an action, judgment, and execution, against this corporation in form, as it was in substance, and not from the time when the amendment was allowed, but from the service of the summons, and in every stage of the proceedings, the court having power and control over it.

A motion for a reargument was thereafter made and argued by

*Charles Tracy*, for the motion.

*Edward Patterson*, opposed.

CHARLES P. DALY, Chief Justice.—The question in this case was not a question between the defendant and the corporation, or between the corporation and an original subscriber to its stock, but between a creditor of a corporation and a stockholder, who under the provisions of the 11th section of the act of 1850 (3d Edm. Rev. Stat. p. 646), is individually liable to the creditors, to the extent of the amount unpaid upon the stock held by him.

The statute is general in its terms, and does not, in a case where the capital has been subscribed for, and has been issued to a subscriber without the payment of the 10 per cent., limit the creditor's remedy to an action against the original subscriber. It declares that each stockholder of any company formed under the act shall be individually liable to the creditors of such company, to an amount equal to the amount unpaid upon the stock held by him; so that the only question that arises under this provision is whether the party sued is a stockholder; whether any amount remains unpaid upon the stock held by him, and the extent of that amount.

It is a liability incurred by any one who becomes a stockholder of the corporation which is organized under the act, and as between a stockholder and a creditor, it is wholly immaterial whether he was a *bona fide* and innocent purchaser of stock which the vendor assured him had been paid, or which he had every reason to suppose had been paid. His remedy, if he has been inveigled into the purchase of unpaid stock, is against the vendor (*N. Y. & N. H. R. R. Co.* v. *Schuyler et al.*, 34 N. Y. 49, 50, and the cases there cited; *Holbrook* v. *N. J. Zinc Co.* 57 Id. 616).

In the present case the corporation issued the stock which the defendant held to an original subscriber, without the payment by him of the 10 per cent. in money, which the statute requires (L. 1850, p. 213, § 4). The company received in payment as the 10 per cent. a transfer of certain patent rights, which were at the time of no appreciable or known value, though supposed then to be valuable, but which afterwards proved to be worth nothing. We held this not to be a payment of money, as the statute requires; so that the original

Tasker v. Wallace.

subscriber, Harvey, was a holder of stock upon which nothing was paid. This unpaid stock he afterwards returned, or, as it is claimed, loaned to the company, that it might be used by them to enable them to sell their bonds. The defendant was a purchaser of these bonds at 80 per cent. The company sold the defendant $500 of this unpaid stock and $1,000 of bonds for every $800 paid by him in cash; and before the stock was delivered to him, it had been transferred on the company's books. This, the defendant claims, made him a purchaser of the stock for value, which may have been so as between him and the company, but as between him and the creditor, he was the holder of stock which had been issued without the payment of the 10 per cent. as required by law, which the company had no right originally to issue to Harvey, or when returned to them by Harvey, had no right to transfer to the defendant as valid stock, which it was not. It is said, however, that although the stock was loaned by Harvey to the company to enable them to sell their bonds, that it was reissued by the company to the plaintiff, he paying a valuable consideration therefor. He may, therefore, present the question, whether this was a case within the meaning of the statute, in which a stockholder is liable to a creditor of the company to the extent of unpaid stock held by him, and I think that it is better that the motion for a reargument should be granted, that this question may be fully considered and deliberately passed upon.

ROBINSON, J.—My impressions are that the plaintiffs, as creditors, are only entitled to be subrogated to the rights of the corporation to make claim for any amount due from a subscriber for its stock upon his subscription or contract to pay for the stock its par amount; that a purchaser from, or assignee of, one to whom the stock has been issued conditionally, who has not assumed to pay what was due upon the subscription price, is not, within the intendment of the statute, the stockholder against whom any claim can be made for non-payment of the subscription; that the responsibilities accruing under sections 4 and 11, of chapter 140, of the Laws of 1850, are distinct in their

character, and infractions of the positive terms of section 4 can-
not be made available by creditors; that the company having
accepted payment in property at an agreed value instead of
money, for stock actually issued, the holder of the stock is
exempt from further reclamation on the part of a creditor.
Entertaining the doubts referred to by the chief justice, I con-
cur with him in the opinion that the case, under such circum-
stances, should be reargued.

Reargument granted.*

---

* On the reargument the court adhered to the opinion that the judgment ought
to be reversed, and so ordered.